UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JESSICA SALCH,

                              Plaintiff,

    -against-

THE CITY OF NEW YORK, a municipal entity; and New York City Police Officers RICHARD LENNOX (Shield #2289), KOREY NOAK (Shield #854), and "JOHN DOES" Nos. 1, 2, 3, etc. (whose identity is unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities.

                              Defendants.

------------------------------------------------------------X

14 CV 9882

**COMPLAINT**

**JURY TRIAL**

JUDGE BUCHWALD



Plaintiff JESSICA SALCH, by her attorneys, Beldock Levine & Hoffman LLP, as and for her complaint against the defendants named above alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action brought under 42 U.S.C. § 1983 for violations of rights guaranteed to the plaintiff by the United States Constitution, including its Fourth and Fourteenth Amendments, and for violations of the laws and Constitution of the State of New York, by defendants THE CITY OF NEW YORK ("CITY"), and New York City Police Officers RICHARD LENNOX ("LENNOX"), shield #2289, KOREY NOAK ("NOAK"), shield #854, and "JOHN DOES Nos. 1, 2, 3, etc. ("DOES").

2.    Plaintiff seeks redress for substantial injuries she suffered when she was unlawfully detained, frisked, arrested, and maliciously prosecuted. The defendant officers approached plaintiff without any suspicion of any illegal activity while she was walking along

171st street, Bronx, New York, stopped her, and seized and began searching through her purse while questioning her. Without requesting or receiving permission, one of the officers removed from plaintiff's purse a prescription bottle containing Xanax that bore plaintiff's name, her doctor's name, her pharmacy, and other identifying and instructional information. Although plaintiff explained to the officers that the Xanax had been legally prescribed to her and provided the officers with evidence to substantiate her claim, the officers falsely charged plaintiff with criminal possession of a controlled substance. That charge was eventually dismissed by motion of the Bronx County District Attorney's Office.

3. Plaintiff seeks compensatory damages for loss of liberty, psychological and emotional distress, and other injuries caused by the illegal actions of the defendants; punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and such other and further relief, including costs and attorneys' fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## JURY DEMAND

7.     Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

## THE PARTIES

8.     Plaintiff JESSICA SALCH ("Plaintiff") is a citizen of the United States. She was at all times relevant to this complaint a resident of Westchester County and the State of New York.

9.     Defendant CITY is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10.    At all times relevant herein, defendants LENNOX, NOAK, and DOES were NYPD Police Officers. Upon information and belief, defendants LENNOX, NOAK, and DOES are still NYPD Police Officers.

11.    At all times relevant herein, LENNOX, NOAK, and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

12.    At all times relevant herein, LENNOX, NOAK, and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

13.  Plaintiff personally served a Notice of Claim upon the CITY on September 12, 2014, within ninety days of the events giving rise to her claim. Plaintiff appeared and was questioned at an administration hearing pursuant to New York General Municipal Law §50-h on October 20, 2014. The CITY and the New York City Comptroller have neglected and refused to adjust or pay plaintiff's claims.

14.  This action is filed within one year of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

15.  Plaintiff was born in Mount Kisco, New York, and raised in Peekskill, New York. She is a thirty-five year old Caucasian.

16.  On or about June 14, 2014, plaintiff attended a barbecue at Crotona Park in the Bronx, where she socialized with women who had been her clients at a battered women's shelter.

17.  At approximately 3:00 p.m. plaintiff left the barbecue at Crotona Park and started walking west on 171st Street to catch the B15 bus at 3rd Avenue and Claremont Parkway to return to her home, where her fiancé and six year old son were waiting for her.

18.  On or about the corner of 171st Street and Crotona Place, an African-American male walking east on 171st Street greeted plaintiff as he passed her.

19.  Plaintiff, who recalled knowing the male but could not recall his name, returned the greeting and continued walking towards the bus stop.

20.  Moments later, two unmarked vans pulled up in front of plaintiff and four police officers in plain clothes, including defendant NYPD police officers LENNOX, NOAK, and DOES, exited each van.

21. Defendant NYPD police officers LENNOX, NOAK, and DOES ordered plaintiff to stop.

22. Plaintiff stopped and stood facing the police officers.

23. Without seeking plaintiff's consent, one of the police officers snatched plaintiff's purse off of her shoulder and began searching through it.

24. Other police officers asked plaintiff what she was doing there.

25. Plaintiff responded that she had just been attending a barbecue in Crotona Park.

26. One of the police officers asked plaintiff who the person was whom she had just greeted.

27. Plaintiff responded that she did not know the person's name.

28. The police officer searching through plaintiff's purse pulled out a prescription bottle from an inner pocket that had been closed by a zipper.

29. The prescription bottle bore a prescription label that indicated a prescription to plaintiff for Xanax, plaintiff's name and address, her doctor's name, the name and address of the pharmacy that had dispensed the prescription to plaintiff, directions that plaintiff take one pill of Xanax four times daily, and other relevant information normally found on a standard prescription bottle as required by New York State Education Law § 6810, Prescriptions.

30. The prescription bottle contained approximately eight blue pills, each of which bore an imprint of G3722.

31. Upon information and belief, it is a pharmaceutical industry standard practice to identify a pill as 2 milligrams of Alprazolam (Xanax) imprinting the pill with "G3722."

32. The defendant police officers questioned plaintiff as to whether she had bought Xanax from the person she had greeted before the police had stopped her or sold it to him.

33. Plaintiff responded that she had neither sold nor bought Xanax from that person.

34. Upon information and belief, defendant police officers did not attempt to stop, question or contact the person that had greeted plaintiff just prior to plaintiff's seizure by the police officers.

35. Plaintiff told the defendant police officers that she had lawfully been prescribed the Xanax in the prescription bottle that the police officers had removed from her purse.

36. Plaintiff referred the defendant police officers to the prescription label on that bottle and provided the police officers with her driver's license and other identification to confirm that she was, in fact, the person to whom the Xanax had been prescribed.

37. After reviewing plaintiff's driver's license, one of the defendant police officers again asked plaintiff what she was doing in that neighbourhood.

38. Plaintiff again told the police officers that she had been attending a barbecue at Crotona Park and that she was now on her way to catch a bus to return to her home in Peekskill.

39. A male police officer then performed a pat down search of plaintiff.

40. Plaintiff was then placed in handcuffs by the police officers.

41. Plaintiff complained to the police officers that the handcuffs were too tight and hurting her, but the police officers did not loosen them.

42. Plaintiff was then placed in one of the police vans and taken to the 42nd precinct.

43. While she was being processed at the 42nd precinct, plaintiff asked a police officer how long they were going to hold her.

44. Plaintiff was told that after she was processed, they would release her with a Desk Appearance Ticket as long as she had no outstanding warrants.

45. Plaintiff was processed by the police officers and then placed in a holding cell.

46. At approximately 9:00 p.m., plaintiff's arresting officer came to see her in the holding cell.

47. Plaintiff asked the police officer if she was going to be allowed to leave.

48. The police officer responded that they were going to continue to hold her because they had learned from running a background check on plaintiff that she was wanted in connection with a murder that had occurred in Florida.

49. Plaintiff was very upset by this, including because she feared being held in custody indefinitely regarding a serious Florida crime about which she knew nothing.

50. Plaintiff asked the police officer if he was joking about her being wanted on a warrant in Florida; the police officer responded by laughing and telling plaintiff, in sum and substance, that she could "use the sun."

51. Approximately two hours after telling plaintiff she was wanted in Florida, plaintiff's arresting officer informed plaintiff that she was being released with a desk appearance ticket.

52. As plaintiff was being released from police custody, she asked her arresting officer for her medication to be returned to her.

53. Plaintiff's arresting officer responded by telling plaintiff, in sum and substance, "You'll be fine."

54. Plaintiff's medication was never returned to her.

55. Plaintiff was never given an NYPD Property Clerk's Invoice voucher for her medication that had been taken from her by the defendant police officers.

56. Plaintiff was released from custody by police officers at the 42nd precinct with a desk appearance ticket at approximately 11:00 p.m., June 15, 2014.

57. The desk appearance ticket charged plaintiff with violating P.L. 220.03: Criminal Possession of a Controlled Substance in the 7th Degree.

58. In the criminal court complaint charging plaintiff, defendant police officer LENNOX swore that defendant police officer NOAK had observed "defendant to have on her person, in her purse which she was carrying, a prescription bottle, housing eight (8) blue pills, imprinted G3722."

59. The criminal court complaint gave no explanation for why defendant police officer NOAK was making observations of the contents inside of plaintiff's purse.

60. Defendant police officer LENNOX further swore in the criminal court complaint that, based on his "training and experience, which includes training in the recognition of controlled substance and marijuana, a dried, green leafy substance with a distinctive odor, and their packaging, the aforementioned substances are alleged and believed to be ALPRAZOLAM (XANAX)."

61. Plaintiff was unable to get in touch with her doctor to have her prescription of Xanax re-filled until the following Tuesday, June 17, 2014.

62. As a result of not having her medication, plaintiff suffered severe anxiety, vertigo, and other withdrawal symptoms.

63. Plaintiff additionally suffered near constant panic attacks, could not stop crying, and feared she was going to have a seizure.

64. Because of her condition, plaintiff could not drive, read, or do any of her other normal daily activities.

65. Plaintiff was thereafter compelled to go to Bronx Criminal Court on or about August 19, 2014, because of the defendants' baseless allegations.

66. The charges against plaintiff were dismissed on the motion of the Bronx County District Attorney's Office on or about September 26, 2014.

67. Plaintiff was not engaged in any activity that was in violation of any law during the events described above and defendants had neither reasonable suspicion to stop and search plaintiff nor probable cause to arrest her.

68. At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

69. Defendants' conduct caused plaintiff to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, and harm to her reputation.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights

70. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

71. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a. the right to be free from unreasonable search and seizure of her person;

    b. the right to be free from arrest without probable cause;

    c. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which she did not consent;

    d. the right to be free from the lodging of false criminal charges against her by police officers;

  e.  the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor;

  f.  the right to be free from abuse of process;

  g.  the right to be free from deprivation of liberty without due process of law; and

  h.  the right to equal protection, privileges, and immunities under the laws.

72. As a direct and proximate result of defendant NYPD police officers LENNOX's, NOAK's, and DOES' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

73. The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CAUSE OF ACTION
*Respondeat Superior*

74. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75. At all relevant times, defendant NYPD police officers LENNOX, NOAK and DOES were employees of the City and were acting within the scope of their employment.

76. The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendant NYPD police officers LENNOX, NOAK, and DOES set forth herein.

## THIRD CAUSE OF ACTION
### Violations of the New York State Constitution

77. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

78. Defendants subjected plaintiff to the foregoing acts and omissions without due process of law, thereby depriving plaintiff of rights, privileges, and immunities guaranteed by Article 1, §§ 1, 6, and 12 of the New York State Constitution, including, without limitation, the following:

   a. Plaintiff was deprived of her rights and privileges guaranteed by Article 1, § 1 of the New York State Constitution;

   b. Plaintiff was deprived of her right to due process guaranteed by Article 1, § 6 of the New York State Constitution; and

   c. Plaintiff was deprived of her right to be free from unreasonable searches and seizures guaranteed by Article 1, § 12 of the New York State Constitution.

79. As a direct and proximate result of defendant NYPD police officers LENNOX's, NOAK's, and JOHN DOES' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

80. The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## FOURTH CAUSE OF ACTION
### Assault and Battery

81. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82.     Defendant NYPD police officers LENNOX, NOAK, and DOES, without just cause, wilfully and maliciously used physical force against plaintiff causing her injuries.

83.     Defendant NYPD police officers LENNOX, NOAK, and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for plaintiff's rights, and are therefore liable for punitive damages.

### FIFTH CAUSE OF ACTION
#### False Imprisonment

84.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     Defendant NYPD police officers LENNOX, NOAK, and DOES, through the foregoing acts, caused plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which she did not consent.

86.     Defendant NYPD police officers LENNOX, NOAK, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### SIXTH CAUSE OF ACTION
#### Malicious Prosecution

87.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     Defendant NYPD police officers LENNOX, NOAK, and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against plaintiff, which ended in her favor, without probable cause to believe plaintiff was guilty of the crimes charged.

89.     Defendant NYPD police officers LENNOX, NOAK, and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

### SEVENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

90.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     Defendant NYPD police officers LENNOX, NOAK, and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

92.     Defendant NYPD police officers LENNOX, NOAK, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### EIGTH CAUSE OF ACTION
**Negligence**

93.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     Defendant NYPD police officers LENNOX, NOAK, and DOES owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

95.     Defendant NYPD police officers LENNOX, NOAK, and DOES, by the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to

perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

96. All of these acts were performed without any negligence on the part of plaintiff and were the proximate cause of injuries to plaintiff.

**NINTH CAUSE OF ACTION**
**Negligent Infliction of Emotional Distress**

97. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98. As police officers acting in the performance of their duties, defendant NYPD police officers LENNOX, NOAK, and DOES owed plaintiff a duty of care.

99. In breach of that duty, defendant NYPD police officers LENNOX's, NOAK's, and DOES' foregoing conduct endangered plaintiff's safety and caused her to fear for her safety.

100. As a result, plaintiff suffered emotional distress.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiff demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendant NYPD police officers LENNOX, NOAK, and DOES to the extent allowable by law;

(c) attorney's fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 15, 2014

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 2600
New York, New York 10016
(212) 490-0400

_____
Marc A. Cannan

*Attorneys for Plaintiff Jessica Salch*